

Ditech Financial LLC
Attention: Loss Mitigation, T111
2100 East Elliot Road, Building 94
Tempe, AZ 85284

July 3, 2017

EUGENE D
ROTH
2520 HIGHWAY 35 STE 307
MANASQUAN, NJ 08736

Re:     Ditech Financial LLC, ("Ditech")
       Customer Name: PHIL TOSTI and DIVINA DAVID
       Account Number: 0035818780
       Property Address: 33 CARRAIGE WAY
                             FREEHOLD, NJ 07728

**THIS INFORMATIONAL NOTICE IS NOT AN ATTEMPT TO COLLECT A DEBT. IF YOUR CLIENT IS CURRENTLY IN BANKRUPTCY OR THEY DISCHARGED THIS DEBT IN A BANKRUPTCY, THE SERVICER IS NOT ATTEMPTING TO COLLECT OR RECOVER THE DEBT AS THEIR PERSONAL LIABILITY.**

Dear EUGENE D ROTH:

**Congratulations!** Your client is approved for a permanent modification. This is the first step towards qualifying for a more affordable mortgage payment. Please read this letter in its entirety so that your client understands all of the steps your client needs to take to modify their mortgage payments.

**What your client needs to do:**
To accept this offer and take advantage of this opportunity, your client must sign and return the enclosed Agreement by 08/02/2017. After the signed Agreement has been received, your client's mortgage will then be permanently modified.
If your client does not provide the required signed Agreement by the above-referenced date, this offer will end and your client's account will not be modified.

If you have any questions, please call us toll-free at 1-800-643-0202, Monday - Friday 7 a.m. to 8 p.m., Saturday 7 a.m. to 1 p.m. CST.

Ditech Financial LLC
Attention: Loss Mitigation, T111

---

0035818780                                          ABK                                                            8/19/2016
GSE Mod Cover Letter                                                             LTR-1019

2017070317.1.0.4352-J20150825Y



Imb Tracking Number: 00040000074522850094985284000000

2100 East Elliot Road, Building 94
Tempe, AZ 85284
Fax: 1-877-612-2422

Ditech has designated the following address where mortgage loan customers must send any Qualified Written Request, Notice of Error or Request for Information: PO Box 6176, Rapid City, SD 57709-6176.

Sincerely,

Ditech
1-800-643-0202
Monday - Friday 7 a.m. to 8 p.m., Saturday 7 a.m. to 1 p.m. CST

0035818780
GSE Mod Cover Letter

ABK

2017070317.1.0.4352-J20150825Y

8/19/2016
LTR-1019



## Account Modification
## TRANSPARENCY NOTICE

This Account Modification Summary is intended to be a clear and simple summary of the final account modification that we are pleased to offer your client. We believe the account modification will help put your client in a better position to make their account payments. When your client signs and returns the enclosed account modification agreement, they are agreeing to a new and permanent account modification. Please thoroughly review all of the enclosed documents to ensure that your client understands the details of their account modification agreement.

**Summary of Your Client's Modified Account:**

Your client's new balance is $114,873.99. To calculate this new account balance, we added past due interest in the amount of $4,995.50 and eligible servicing expenses of $1,208.50 and taxes and insurance of $39,779.60 totaling $45,983.60 to your client's principal balance. Unpaid late fees are not included in this amount and will be waived when your client's account modification is finalized. If your client's account has mortgage insurance, the mortgage insurance premium may increase as a result of the higher mortgage loan balance.

The current interest rate of 4.875% is staying at 4.875% for the life of your client's modified account.

Your client's final payment date, which is their new maturity date, is July 1, 2057.

**Your New Mortgage Payments:**

Your client's new total modified monthly mortgage payments of $1,815.33 are made up of principal and interest of $544.44 and an initial escrow amount of $1,270.89. Escrow payments are collected for payment of items such as property taxes and insurance and may change. We will notify your client of any adjustments to the total monthly payment.

Your client's total monthly payments will be due on the 1st of the month starting the 1st of August, 2017.

| Years | Interest Rate | Interest Rate Change Date | Monthly Principal and Interest Payment Amount | Estimated Monthly Escrow Payment Amount* | Total Monthly Payment* | Payment Begins On | Number of Monthly Payments |
|---|---|---|---|---|---|---|---|
| 1 - 40 | 4.875% | 07/01/2017 | $544.44 | $1,270.89, may adjust periodically | $1,815.33, may adjust periodically | 08/01/2017 | 480 |

\* The escrow payments may be adjusted periodically in accordance with applicable law and therefore the total monthly payment may change accordingly.

If your client has questions regarding the modification agreement or the steps they must take to complete this process, please call the assigned account representative KELLIX L at 1-800-643-0202, extension 50091 Monday - Friday 7 a.m. to 8 p.m., Saturday 7 a.m. to 1 p.m. CST.

0035818780  
Mod Transparency Notice

ABK

2017070317.1.0.4352-J20150825Y

09/18/2015  
LTR-431



# DIVINA DAVID

**WELLS FARGO**

## A customized summary of your visit

**September 5, 2017**



### What's important to you?

- Saving
- Investing
- Home
- Retirement
- Insurance

*Convenient access when you need it:*
- *13,000 ATMs*
- *More than 6,000 branches*
- *Wells Fargo Online®*
  *wellsfargo.com*

You can make an appointment to meet with a banker at wellsfargo.com/appointments

You can also talk to a banker at 1-800-869-3557 24 hours a day, 7 days a week

***Thank you for being our customer***

### What we discussed with you today

Please refer to the Fee & Information Schedule for full details including all fees for each deposit product and service you selected today and to any disclosures you received for each credit product for which you applied. If you need a copy of these materials, please ask a banker.

- **Notary**

  Thank you for the opportunity to assist you today. Your notary service request has been completed.

**Banker:** NIRAJ SHAH                                    **Phone:** 732/577-0112
**Manager:** CELESTE LEE                                  **Phone:** 732/845-8406
**Bank Name:** FREEHOLD TOWNSHIP
**Street:**   800 W MAIN ST
**City:**   FREEHOLD
**State:**   NJ            **ZIP/Postal Code:**     07728

---

* **Investment, insurance products and identity theft protection plans:**

- Are Not insured by the FDIC or any other federal government agency.
- Are Not deposits of or guaranteed by a Bank or any Bank Affiliate.
- May Lose Value.

---

*Investment products and services are offered through Wells Fargo Advisors. Wells Fargo Advisors is a trade name of Wells Fargo Clearing Services, LLC, Member SIPC, a registered broker-dealer and separate non-bank affiliate of Wells Fargo & Company.

*Bankers may refer customers to Wells Fargo Advisors for brokerage services and may be compensated for such referrals.

*Wells Fargo Advisors offers insurance products through an affiliated nonbank insurance agency (CA license #26-0070024). Other insurance products are offered through Wells Fargo Insurance, Inc. a licensed agency that represents — and is compensated by — the insurer based on the amount of insurance sold.

Deposit and credit products offered by Wells Fargo Bank, N.A. Member FDIC.

© 2017 Wells Fargo Bank, N.A. All rights reserved. NMLSR ID 399801


EQUAL HOUSING LENDER

*Together we'll go far*



MKT2073 (SVP 2-17)

STATE OF: NEW JERSEY,  County: Monmouth,

On this the ___5th___ day of ___September___, ___2017___ before me, the subscriber personally appeared

PHILIP TOSTI and DIVINA FRANCIA J. DAVID

Who, I am satisfied, is/are the person(s) named in and who executed the within instrument, and thereupon acknowledged that he/she/they signed, sealed and delivered the same as his/her/their act and deed, for the purposes therein expressed.



___Nirajkumar M Shah___
Notary Public

STATE OF: NEW JERSEY, County: Monmouth

On this the 5th day of September 2017 before me, the subscriber personally appeared

PHILIP TOSTI and DIVINA FRANCIA J. DAVID

Who, I am satisfied, is/are the person(s) named in and who executed the within instrument, and thereupon acknowledged that he/she/they signed, sealed and delivered the same as his/her/their act and deed, for the purposes therein expressed.



_Nirajkumar M. Shah_
Notary Public

Investor Account # 1695052874

When Recorded, Return to:
Ditech Financial LLC
2100 East Elliot Road, Building 94 T214
Tempe, AZ 85284

This document was prepared by Ditech Financial LLC

_____[Space above This Line for Recording Data]_____

Customer(s)[1]: PHILIP TOSTI and DIVINA FRANCIA J. DAVID
Lender/Servicer ("Lender"): Ditech Financial LLC
Date of first lien mortgage, deed of trust, or security deed ("Mortgage") and Note ("Note"): 03/12/2004
Account Number: 0035818780 Recorded 4/19/2004, Book 8352, PG 6808, Instrument No. 2004085786
MIN: 100015700034743290
Property Address ("Property"): 33 CARRAIGE WAY, FREEHOLD, NJ 07728

## MODIFICATION AGREEMENT

This Modification Agreement ("Agreement"), made this ___ day of ___, 2017, between the Lender and Customer, amends and supplements 1) the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), and Timely Payment Rewards Rider, if any, dated 03/12/2004 and recorded in Book or Liber OR-8352, at page(s) 6808, and/or Document #2004085786 of the County Clerk Records of Monmouth County
                                    (Name of Records)            (County and State, or other Jurisdiction)

and (2) the Note, bearing the same date as, and secured by, the Security Instrument, which covers the real and personal property described in the Security Instrument and defined therein as the "Property", located at
                                33 CARRAIGE WAY, FREEHOLD, NJ 07728
                                        (Property Address)

the real property described in the above-referenced Security Instrument.

   In consideration of the mutual promises and agreements exchanged, the parties hereto agree as follows (notwithstanding anything to the contrary contained in the Note or Security Instrument):

1. As of 07/01/2017, the amount payable under the Note and the Security Instrument (the "New Principal Balance") is U.S. $114,873.99 consisting of the unpaid amount(s) loaned to Customer by Lender plus any interest and other amounts capitalized.

2. Customer promises to pay the Unpaid Principal Balance, plus interest, to the order of Lender. Interest will be charged on the Unpaid Principal Balance at the yearly rate of 4.875%, from 07/01/2017. Customer promises to make monthly payments of principal and interest of U.S. $544.44, beginning on the 08/01/2017, and continuing thereafter on the same day of each succeeding month until principal and interest are paid in full. The yearly rate of 4.875% will remain in effect until principal and interest are paid in full. The new monthly payment amount does not include any amounts owed for escrow. Customer may refer to the monthly billing statement for the escrow amount owed. If on 07/01/2057 (the "Maturity Date"), Customer still owes amounts under the Note and

0035818780                                       ABK
LOAN MODIFICATION AGREEMENT - Single Family - Fannie Mae/Freddie Mac Uniform Instrument                Form 3179 1/01 (rev. 09/16)
                                                                                                       LTR-442
                        2017070317.1.0.4352-J20150825Y



Exhibit        Page 8 of 20

Lmb Tracking Number: 000400007452285009498528400000

In Witness Whereof, the Lender and I have executed this Agreement

Ditech Financial LLC fka Green Tree Servicing LLC
Lender

By: _____

PHILIP TOSTI

9/5/2017
Date

_____
Date

Divina Francia David
DIVINA FRANCIA J. DAVID

9/6/2017
Date

[Space Below This Line For Acknowledgments]

LOAN MODIFICATION AGREEMENT - Single Family - Fannie Mae/Freddie Mac Uniform Instrument                              Form 3179 1/01 (rev. 09/16)
                                                                                                                     LTR-442
2017070317.1.0.4352-J20150825Y

Investor Account # 1695052874

When Recorded, Return to:
Ditech Financial LLC
2100 East Elliot Road, Building 94 T214
Tempe, AZ 85284

This document was prepared by Ditech Financial LLC

_____[Space above This Line for Recording Data]_____

Customer(s)[1]: PHILIP TOSTI and DIVINA FRANCIA J. DAVID
Lender/Servicer ("Lender"): Ditech Financial LLC
Date of first lien mortgage, deed of trust, or security deed ("Mortgage") and Note ("Note"): 03/12/2004
Account Number: 0035818780 Recorded 4/19/2004, Book 8352, PG 6808, Instrument No. 2004085786
MIN: 100015700034743290
Property Address ("Property"): 33 CARRAIGE WAY, FREEHOLD, NJ 07728

## MODIFICATION AGREEMENT

This Modification Agreement ("Agreement"), made this ___ day of ___, 2017, between the Lender and Customer, amends and supplements 1) the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), and Timely Payment Rewards Rider, if any, dated 03/12/2004 and recorded in Book or Liber OR-8352, at page(s) 6808, and/or Document #2004085786 of the   County Clerk   Records of   Monmouth County
                     (Name of Records)            (County and State, or other Jurisdiction)

and (2) the Note, bearing the same date as, and secured by, the Security Instrument, which covers the real and personal property described in the Security Instrument and defined therein as the "Property", located at
                          33 CARRAIGE WAY, FREEHOLD, NJ 07728                            ,
                                      (Property Address)

the real property described in the above-referenced Security Instrument.

   In consideration of the mutual promises and agreements exchanged, the parties hereto agree as follows (notwithstanding anything to the contrary contained in the Note or Security Instrument):

1. As of 07/01/2017, the amount payable under the Note and the Security Instrument (the "New Principal Balance") is U.S. $114,873.99 consisting of the unpaid amount(s) loaned to Customer by Lender plus any interest and other amounts capitalized.

2. Customer promises to pay the Unpaid Principal Balance, plus interest, to the order of Lender. Interest will be charged on the Unpaid Principal Balance at the yearly rate of 4.875%, from 07/01/2017. Customer promises to make monthly payments of principal and interest of U.S. $544.44, beginning on the 08/01/2017, and continuing thereafter on the same day of each succeeding month until principal and interest are paid in full. The yearly rate of 4.875% will remain in effect until principal and interest are paid in full. The new monthly payment amount does not include any amounts owed for escrow. Customer may refer to the monthly billing statement for the escrow amount owed. If on 07/01/2057 (the "Maturity Date"), Customer still owes amounts under the Note and

0035818780                                              ABK
LOAN MODIFICATION AGREEMENT - Single Family - Fannie Mae/Freddie Mac Uniform Instrument                               Form 3179 1/01 (rev. 09/16)
                                                                                                                      LTR-442
                               2017070317.1.0.4352-J20150825Y

In Witness Whereof, the Lender and I have executed this Agreement

Ditech Financial LLC fka Green Tree Servicing LLC
Lender                                    PHILIP TOSTI

By: _____            _____9/5/2017_____
                                              Date


_____                 _Divina Francia David_
Date                                      DIVINA FRANCIA J. DAVID

                                         _____9/5/2017_____
                                              Date

[Space Below This Line For Acknowledgments]

the Security Instrument, as amended by this Agreement, Customer will pay these amounts in full on the Maturity Date. Customer's payment schedule for the modified account is as follows:

| Years | Interest Rate | Interest Rate Change Date | Monthly Principal and Interest Payment Amount | Estimated Monthly Escrow Payment Amount* | Total Monthly Payment* | Payment Begins On | Number of Monthly Payments |
|---|---|---|---|---|---|---|---|
| 1 - 40 | 4.875% | 07/01/2017 | $544.44 | $1,270.89, may adjust periodically | $1,815.33, may adjust periodically | 08/01/2017 | 480 |

\* The escrow payments may be adjusted periodically in accordance with applicable law and therefore my total monthly payment may change accordingly.

3. If all or any part of the Property or any interest in the Property is sold or transferred (or if Customer is not a natural person and a beneficial interest in Customer is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by the Security Instrument.

    If Lender exercises this option, Lender shall give Customer notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Customer must pay all sums secured by the Security Instrument. If Customer fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Security Instrument without further notice or demand on Customer.

    Customer understands and agrees that:

    (a) All the rights and remedies, stipulations, and conditions contained in the Security Instrument relating to default in the making of payments under the Security Instrument shall also apply to default in the making of the modified payments hereunder.

    (b) All covenants, agreements, stipulations, and conditions in the Note and Security Instrument shall be and remain in full force and effect, except as herein modified, and none of the Customer's obligations or liabilities under the Note and Security Instrument shall be diminished or released by any provisions hereof, nor shall this Agreement in any way impair, diminish, or affect any of Lender's rights under or remedies on the Note and Security Instrument, whether such rights or remedies arise thereunder or by operation of law. Also, all rights of recourse to which Lender is presently entitled against any property or any other persons in any way obligated for, or liable on, the Note and Security Instrument are expressly reserved by Lender.

    (c) Nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the Note and Security Instrument.

    (d) All costs and expenses incurred by Lender in connection with this Agreement, including recording fees, title examination, and attorney's fees, shall be paid by the Customer and shall be secured by the Security Instrument, unless stipulated otherwise by Lender.

    (e) Customer acknowledges that Lender may be required to report to the Internal Revenue Service any debt forgiveness of $600 or more in principal, subject to certain exceptions that may or may not apply to Customer. If required, such reporting may result in consequences regarding Customer's federal, state or local tax liability. In addition, if Customer receives public assistance, the forgiveness of debt may affect Customer's eligibility for these benefits. Ditech cannot provide any advice or guidance

0035818780    ABK
LOAN MODIFICATION AGREEMENT - Single Family - Fannie Mae/Freddie Mac Uniform Instrument    Form 3179 1/01 (rev. 09/16)
LTR-442


2017070317.1.0.4352-J20150825Y



regarding possible tax consequences or effect on any public assistance benefits. Customer may wish to consult with a tax professional about any possible tax consequences and/or Customer's public assistance office regarding other consequences that may result from the forgiveness of debt.

(f) Customer agrees to make and execute such other documents or papers as may be necessary or required to effectuate the terms and conditions of this Agreement which, if approved and accepted by Lender, shall bind and inure to the heirs, executors, administrators, and assigns of the Customer.

(g) Customer authorizes Lender, and Lender's successors and assigns, to share certain Customer public and non-public personal information including, but not limited to (i) name, address, telephone number, (ii) Social Security Number, (iii) credit score, (iv) income, and (v) payment history and information about Customer's account balances and activity, with an authorized third Agency or similar entity that is assisting Customer in connection with obtaining a foreclosure prevention alternative, including the trial period plan to modify Customer's account ("Authorized Third Party").

Customer understands and consents to Lender or Authorized Third Party, as well as Fannie Mae (the owner of Customer's account), disclosing such personal information and the terms of any relief or foreclosure prevention alternative, including the terms of the trial period plan to modify Customer's account, to any insurer, guarantor, or servicer that insures, guarantees, or services Customer's account or any other mortgage account secured by the Property on which Customer is obligated, or to any companies that perform support services to them in connection with the account or any other mortgage account secured by the Property on which Customer is obligated.

Customer consents to being contacted by Fannie Mae, Lender or Authorized Third Party concerning mortgage assistance relating to Customer's account.

4. By this paragraph, lender is notifying customer that any prior waiver by lender of customer's obligation to pay to lender funds for any or all escrow items is hereby revoked, and customer has been advised of amount needed to fund the escrow items.

Customer will pay to Lender on the day payments are due under the Account Documents as amended by this Agreement, until the Account is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over the Mortgage as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under the Account Documents; (d) mortgage insurance premiums, if any, or any sums payable to Lender in lieu of the payment of mortgage insurance premiums in accordance with the Account Documents; and (e) any community association dues, fees, and assessments that Lender requires to be escrowed. These items are called "Escrow Items." Customer shall promptly furnish to Lender all notices of amounts to be paid under this paragraph. Customer shall pay Lender the Funds for Escrow Items unless Lender waives Customer's obligation to pay the Funds for any or all Escrow Items. Lender may waive Customer's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Customer shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Customer's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in the Account Documents, as the phrase "covenant and agreement" is used in the Account Documents. If Customer is obligated to pay Escrow Items directly, pursuant to a waiver, and Customer fails to pay the amount due for an Escrow Item, Lender may exercise its rights under the Account Documents and this Agreement and pay such amount and Customer shall then be obligated to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in




accordance with the Account Documents, and, upon such revocation, Customer shall pay to Lender all Funds, and in such amounts, that are then required under this paragraph.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under the Real Estate Settlement Procedures Act ("RESPA"), and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Customer for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Customer interest on the Funds and applicable law permits Lender to make such a charge. Unless an agreement is made in writing or applicable law requires interest to be paid on the Funds, Lender shall not be required to pay Customer any interest or earnings on the Funds. Lender and Customer can agree in writing, however, that interest shall be paid on the Funds. Lender shall provide Customer, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Customer for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Customer as required by RESPA, and Customer shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Customer as required by RESPA, and Customer shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by the Account Documents, Lender shall promptly refund to Customer any Funds held by Lender.

5. Customer also will comply with all other covenants, agreements, and requirements of the Security Instrument, including without limitation, Customer's covenants and agreements to make all payments of taxes, insurance premiums, assessments, escrow items, impounds, and all other payments that Customer is obligated to make under the Security Instrument; however, the following terms and provisions are forever canceled, null and void, as of the date specified in paragraph No. 1 above:

    (a) all terms and provisions of the Note and Security Instrument (if any) providing for, implementing, or relating to, any change or adjustment in the rate of interest payable under the Note, including, where applicable, the Timely Payment Rewards rate reduction, as described in paragraph 1 of the Timely Payment Rewards Addendum to Note and paragraph A.1. of the Timely Payment Rewards Rider. By executing this Agreement, Customer waives any Timely Payment Rewards rate reduction to which Customer may have otherwise been entitled; and

    (b) all terms and provisions of any adjustable rate rider, or Timely Payment Rewards Rider, where applicable, or other instrument or document that is affixed to, wholly or partially incorporated into, or is part of, the Note or Security Instrument and that contains any such terms and provisions as those referred to in (a) above.

6. Customer understands and agrees that:

---



(a) All the rights and remedies, stipulations, and conditions contained in the Security Instrument relating to default in the making of payments under the Security Instrument shall also apply to default in the making of the modified payments hereunder.

(b) All covenants, agreements, stipulations, and conditions in the Note and Security Instrument shall be and remain in full force and effect, except as herein modified, and none of the Customer's obligations or liabilities under the Note and Security Instrument shall be diminished or released by any provisions hereof, nor shall this Agreement in any way impair, diminish, or affect any of Lender's rights under or remedies on the Note and Security Instrument, whether such rights or remedies arise thereunder or by operation of law. Also, all rights of recourse to which Lender is presently entitled against any property or any other persons in any way obligated for, or liable on, the Note and Security Instrument are expressly reserved by Lender.

(c) Nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the Note and Security Instrument.

(d) All costs and expenses incurred by Lender in connection with this Agreement, including recording fees, title examination, and attorney's fees, shall be paid by the Customer and shall be secured by the Security Instrument, unless stipulated otherwise by Lender.

(e) Customer agrees to execute such other documents as may be reasonably necessary to either (i) consummate the terms and conditions of this Agreement; or (ii) correct the terms and conditions of this Plan if an error is detected after execution of this Agreement. Customer understands that a corrected Agreement will be provided to me and this Agreement will be void and of no legal effect upon notice of such error. If Customer elects not to sign any such corrected Agreement, the terms of the original Account Documents shall continue in full force and effect, such terms will not be modified by this Agreement, and Customer will not be eligible for a modification.

# Exhibit A

ALL that certain lot, parcel or tract of land, situate and lying in the Township of Millstone, County of Monmouth and State of New Jersey being more particularly described as follows:

BEING KNOWN as Lot 15 in Block 44.02 on a map entitled "Final Plat Section 1 and 2 Major Subdivision of Lot 10, Block 44 and Lot 1, Block 64" situated in the Township of Milstone, Monmouth County, New Jersey and filed in the Monmouth County Clerk's Office on October 22, 1987 as Case No. 220-33.

BEGINNING at the tangential intersection of the easterly right of way of Charleston Spring Road the northerly right of way of Carriage Way (formerly Heritage Drive) if projected south and west respectively and running along the northerly right of way of Carriage Way north 81 degrees 31 minutes 58 seconds east a distance of 240.27 feet to a point of curvature, thence; still along the northern right of way of Carriage Way along a curve to the right having a radius of 1,525.00 feet an arc distance of 268.51 feet to a point of tangency, thence; still along the northerly right of way of Carriage Way South 88 degrees 22 minutes 45 seconds east a distance of 417.80 feet to a point of curvature; thence still along the northern right of way of Carriage Way along a curve to the left having a radius of 350.00 feet and an arc distance of 288.79 feet to a point of tangency, thence; still along the northern right of way of Carriage Way north 44 degrees 20 minutes 43 seconds east a distance of 830.00 feet to a point of curvature; thence still along the northerly right of way of Carriage Way, along a curve to the right having a radius of 700.00 feet and an arc distance of 55.82 feet to apoint, being the point and place of Beginning of the following hereindescribed parcel, and running thence

(1)   Along the common property line separating lots 15 and 16, north 41 degrees 05 minutes 08 seconds west a distance of 304.14 feet to a point; thence

(2)   Along the common property line separating lots 5, 6, 7 and 15, north 44 degrees 20 minutes 43 seconds east a distance of 380.00 feet to a point; thence

(3)   Along the common property line separating lots 14 and 15 south 20 degrees 58 minutes 74 seconds east a distance of 401.59 feet to apoint in the northern right of way of Carriage Way; thence

(4)   Along the northern right of way of Carriage Way along a curve to the left having a radius of 700.00 feet and an arc distance of 245.72 feet to a point, being the point and place of BEGINNING.

FOR INFORMATIONAL PURPOSES ONLY: Also known as Lot 15 in Block 44.02 on the Township of Millstone Tax Map.

Parcel ID: 33-00044-02-00015

the Security Instrument, as amended by this Agreement, Customer will pay these amounts in full on the Maturity Date. Customer's payment schedule for the modified account is as follows:

| Years | Interest Rate | Interest Rate Change Date | Monthly Principal and Interest Payment Amount | Estimated Monthly Escrow Payment Amount* | Total Monthly Payment* | Payment Begins On | Number of Monthly Payments |
|---|---|---|---|---|---|---|---|
| 1 - 40 | 4.875% | 07/01/2017 | $544.44 | $1,270.89, may adjust periodically | $1,815.33, may adjust periodically | 08/01/2017 | 480 |

* The escrow payments may be adjusted periodically in accordance with applicable law and therefore my total monthly payment may change accordingly.

3. If all or any part of the Property or any interest in the Property is sold or transferred (or if Customer is not a natural person and a beneficial interest in Customer is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by the Security Instrument.

If Lender exercises this option, Lender shall give Customer notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Customer must pay all sums secured by the Security Instrument. If Customer fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Security Instrument without further notice or demand on Customer.

Customer understands and agrees that:

(a) All the rights and remedies, stipulations, and conditions contained in the Security Instrument relating to default in the making of payments under the Security Instrument shall also apply to default in the making of the modified payments hereunder.

(b) All covenants, agreements, stipulations, and conditions in the Note and Security Instrument shall be and remain in full force and effect, except as herein modified, and none of the Customer's obligations or liabilities under the Note and Security Instrument shall be diminished or released by any provisions hereof, nor shall this Agreement in any way impair, diminish, or affect any of Lender's rights under or remedies on the Note and Security Instrument, whether such rights or remedies arise thereunder or by operation of law. Also, all rights of recourse to which Lender is presently entitled against any property or any other persons in any way obligated for, or liable on, the Note and Security Instrument are expressly reserved by Lender.

(c) Nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the Note and Security Instrument.

(d) All costs and expenses incurred by Lender in connection with this Agreement, including recording fees, title examination, and attorney's fees, shall be paid by the Customer and shall be secured by the Security Instrument, unless stipulated otherwise by Lender.

(e) Customer acknowledges that Lender may be required to report to the Internal Revenue Service any debt forgiveness of $600 or more in principal, subject to certain exceptions that may or may not apply to Customer. If required, such reporting may result in consequences regarding Customer's federal, state or local tax liability. In addition, if Customer receives public assistance, the forgiveness of debt may affect Customer's eligibility for these benefits. Ditech cannot provide any advice or guidance



regarding possible tax consequences or effect on any public assistance benefits. Customer may wish to consult with a tax professional about any possible tax consequences and/or Customer's public assistance office regarding other consequences that may result from the forgiveness of debt.

(f) Customer agrees to make and execute such other documents or papers as may be necessary or required to effectuate the terms and conditions of this Agreement which, if approved and accepted by Lender, shall bind and inure to the heirs, executors, administrators, and assigns of the Customer.

(g) Customer authorizes Lender, and Lender's successors and assigns, to share certain Customer public and non-public personal information including, but not limited to (i) name, address, telephone number, (ii) Social Security Number, (iii) credit score, (iv) income, and (v) payment history and information about Customer's account balances and activity, with an authorized third Agency or similar entity that is assisting Customer in connection with obtaining a foreclosure prevention alternative, including the trial period plan to modify Customer's account ("Authorized Third Party").

Customer understands and consents to Lender or Authorized Third Party, as well as Fannie Mae (the owner of Customer's account), disclosing such personal information and the terms of any relief or foreclosure prevention alternative, including the terms of the trial period plan to modify Customer's account, to any insurer, guarantor, or servicer that insures, guarantees, or services Customer's account or any other mortgage account secured by the Property on which Customer is obligated, or to any companies that perform support services to them in connection with the account or any other mortgage account secured by the Property on which Customer is obligated.

Customer consents to being contacted by Fannie Mae, Lender or Authorized Third Party concerning mortgage assistance relating to Customer's account.

4. By this paragraph, lender is notifying customer that any prior waiver by lender of customer's obligation to pay to lender funds for any or all escrow items is hereby revoked, and customer has been advised of amount needed to fund the escrow items.

Customer will pay to Lender on the day payments are due under the Account Documents as amended by this Agreement, until the Account is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over the Mortgage as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under the Account Documents; (d) mortgage insurance premiums, if any, or any sums payable to Lender in lieu of the payment of mortgage insurance premiums in accordance with the Account Documents; and (e) any community association dues, fees, and assessments that Lender requires to be escrowed. These items are called "Escrow Items." Customer shall promptly furnish to Lender all notices of amounts to be paid under this paragraph. Customer shall pay Lender the Funds for Escrow Items unless Lender waives Customer's obligation to pay the Funds for any or all Escrow Items. Lender may waive Customer's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Customer shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Customer's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in the Account Documents, as the phrase "covenant and agreement" is used in the Account Documents. If Customer is obligated to pay Escrow Items directly, pursuant to a waiver, and Customer fails to pay the amount due for an Escrow Item, Lender may exercise its rights under the Account Documents and this Agreement and pay such amount and Customer shall then be obligated to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in

0035818780                                    ABK
LOAN MODIFICATION AGREEMENT - Single Family - Fannie Mae/Freddie Mac Uniform Instrument                      Form 3179 1/01 (rev. 09/16)
                                                                                                                       LTR-442
2017070317.1.0.4352-J20150825Y



accordance with the Account Documents, and, upon such revocation, Customer shall pay to Lender all Funds, and in such amounts, that are then required under this paragraph.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under the Real Estate Settlement Procedures Act ("RESPA"), and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Customer for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Customer interest on the Funds and applicable law permits Lender to make such a charge. Unless an agreement is made in writing or applicable law requires interest to be paid on the Funds, Lender shall not be required to pay Customer any interest or earnings on the Funds. Lender and Customer can agree in writing, however, that interest shall be paid on the Funds. Lender shall provide Customer, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Customer for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Customer as required by RESPA, and Customer shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Customer as required by RESPA, and Customer shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by the Account Documents, Lender shall promptly refund to Customer any Funds held by Lender.

5. Customer also will comply with all other covenants, agreements, and requirements of the Security Instrument, including without limitation, Customer's covenants and agreements to make all payments of taxes, insurance premiums, assessments, escrow items, impounds, and all other payments that Customer is obligated to make under the Security Instrument; however, the following terms and provisions are forever canceled, null and void, as of the date specified in paragraph No. 1 above:

   (a) all terms and provisions of the Note and Security Instrument (if any) providing for, implementing, or relating to, any change or adjustment in the rate of interest payable under the Note, including, where applicable, the Timely Payment Rewards rate reduction, as described in paragraph 1 of the Timely Payment Rewards Addendum to Note and paragraph A.1. of the Timely Payment Rewards Rider. By executing this Agreement, Customer waives any Timely Payment Rewards rate reduction to which Customer may have otherwise been entitled; and

   (b) all terms and provisions of any adjustable rate rider, or Timely Payment Rewards Rider, where applicable, or other instrument or document that is affixed to, wholly or partially incorporated into, or is part of, the Note or Security Instrument and that contains any such terms and provisions as those referred to in (a) above.

6. Customer understands and agrees that:



(a) All the rights and remedies, stipulations, and conditions contained in the Security Instrument relating to default in the making of payments under the Security Instrument shall also apply to default in the making of the modified payments hereunder.

(b) All covenants, agreements, stipulations, and conditions in the Note and Security Instrument shall be and remain in full force and effect, except as herein modified, and none of the Customer's obligations or liabilities under the Note and Security Instrument shall be diminished or released by any provisions hereof, nor shall this Agreement in any way impair, diminish, or affect any of Lender's rights under or remedies on the Note and Security Instrument, whether such rights or remedies arise thereunder or by operation of law. Also, all rights of recourse to which Lender is presently entitled against any property or any other persons in any way obligated for, or liable on, the Note and Security Instrument are expressly reserved by Lender.

(c) Nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the Note and Security Instrument.

(d) All costs and expenses incurred by Lender in connection with this Agreement, including recording fees, title examination, and attorney's fees, shall be paid by the Customer and shall be secured by the Security Instrument, unless stipulated otherwise by Lender.

(e) Customer agrees to execute such other documents as may be reasonably necessary to either (i) consummate the terms and conditions of this Agreement; or (ii) correct the terms and conditions of this Plan if an error is detected after execution of this Agreement. Customer understands that a corrected Agreement will be provided to me and this Agreement will be void and of no legal effect upon notice of such error. If Customer elects not to sign any such corrected Agreement, the terms of the original Account Documents shall continue in full force and effect, such terms will not be modified by this Agreement, and Customer will not be eligible for a modification.

# Exhibit A

ALL that certain lot, parcel or tract of land, situate and lying in the Township of Millstone, County of Monmouth and State of New Jersey being more particularly described as follows:

BEING KNOWN as Lot 15 in Block 44.02 on a map entitled "Final Plat Section 1 and 2 Major Subdivision of Lot 10, Block 44 and Lot 1, Block 64" situated in the Township of Milstone, Monmouth County, New Jersey and filed in the Monmouth County Clerk's Office on October 22, 1987 as Case No. 220-33.

BEGINNING at the tangential intersection of the easterly right of way of Charleston Spring Road the northerly right of way of Carriage Way (formerly Heritage Drive) if projected south and west respectively and running along the northerly right of way of Carriage Way north 81 degrees 31 minutes 58 seconds east a distance of 240.27 feet to a point of curvature, thence; still along the northern right of way of Carriage Way along a curve to the right having a radius of 1,525.00 feet an arc distance of 268.51 feet to a point of tangency, thence; still along the northerly right of way of Carriage Way South 88 degrees 22 minutes 45 seconds east a distance of 417.80 feet to a point of curvature; thence still along the northern right of way of Carriage Way along a curve to the left having a radius of 350.00 feet and an arc distance of 288.79 feet to a point of tangency, thence; still along the northern right of way of Carriage Way north 44 degrees 20 minutes 43 seconds east a distance of 830.00 feet to a point of curvature; thence still along the northerly right of way of Carriage Way, along a curve to the right having a radius of 700.00 feet and an arc distance of 55.82 feet to apoint, being the point and place of Beginning of the following hereindescribed parcel, and running thence

(1) Along the common property line separating lots 15 and 16, north 41 degrees 05 minutes 08 seconds west a distance of 304.14 feet to a point; thence

(2) Along the common property line separating lots 5, 6, 7 and 15, north 44 degrees 20 minutes 43 seconds east a distance of 380.00 feet to a point; thence

(3) Along the common property line separating lots 14 and 15 south 20 degrees 58 minutes 74 seconds east a distance of 401.59 feet to apoint in the northern right of way of Carriage Way; thence

(4) Along the northern right of way of Carriage Way along a curve to the left having a radius of 700.00 feet and an arc distance of 245.72 feet to a point, being the point and place of BEGINNING.

FOR INFORMATIONAL PURPOSES ONLY: Also known as Lot 15 in Block 44.02 on the Township of Millstone Tax Map.

Parcel ID: 33-00044-02-00015